IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| MARVIN DEE GOODMAN, | |
| Plaintiff, | CIVIL ACTION NO.: 6:23-cv-54 |
| v. | |
| RANDY TILLMAN, JAMES CLIFTON, and LAKESHIA HUGHES, | |
| Defendants. | |

## REPORT AND RECOMMENDATION

Defendants filed a Motion to Dismiss. Doc. 13. Plaintiff filed a Response, opposing Defendants' Motion. Doc. 15. Defendants filed a Reply. Doc. 17. Plaintiff filed an additional Response to Defendants' Reply. Doc. 18. Defendants then filed a Surreply. Doc. 19. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, **DISMISS as moot** Plaintiff's claims for injunctive relief, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.[1] I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

---

[1] Defendants state that Defendant Clifton passed away after Plaintiff filed his Complaint. Doc. 13 at 1 n.1. Defendant Clifton's estate has not been served in this case and the estate has not filed an appearance in this case. Even if Defendant Clifton had been properly served in this case, the claims against Defendant Clifton should be dismissed for the same reasons Defendants Tilman and Hughes raise. Plaintiff failed to exhaust his available administrative remedies and Plaintiff's claims for injunctive relief are now moot.

**BACKGROUND**

Plaintiff filed this Complaint, asserting an Eighth Amendment claim under 42 U.S.C. § 1983. Doc. 1. Plaintiff was an inmate at Bulloch County Correctional Institute ("BCCI") at the time of the events giving rise to his Complaint. Id. at 3. Plaintiff states he is chronically ill and suffers from diabetes, chronic obstructive pulmonary disease ("COPD"), emphysema, and carpal tunnel syndrome. Id. at 13. Plaintiff alleges doctors at BCCI continuously refuse to provide treatment for his chronic illnesses. Plaintiff alleges the doctor at BCCI prescribed Plaintiff a hand brace for his carpal tunnel syndrome, but the nurse broke the brace apart, rendering it unusable. Id. Plaintiff claims he has consistent issues with his blood sugar levels and the medical staff refuse to provide him any treatment. Id.

On November 11, 2024, Defendants Tillman and Hughes filed their Motion to Dismiss, arguing Plaintiff failed to exhaust all administrative remedies. Doc. 13. Defendants also argue Plaintiff's claims are moot. Defendants state Plaintiff's request for injunctive relief is moot because he has been transferred to a different correctional facility. Id. at 7.

Plaintiff filed a Response, reiterating his claim for lack of medical treatment. Doc. 15. Plaintiff also argues the grievance procedure does not make it mandatory for inmates to file a grievance before filing a claim under 42 U.S.C. § 1983. Id. at 4.

Plaintiff filed a second Response. Doc. 18. Plaintiff argues Defendants should have already been on notice because of Plaintiff's medical records. Id. at 1. Plaintiff argues he made several complaints via kiosk regarding his lack of medical treatment. Plaintiff states he made several discovery demands through an open records request to obtain information from the kiosk at BCCI that would show that he submitted complaints through the kiosk. Plaintiff states Defendants have not responded to the open records request. Id. at 2. Plaintiff also states he sent

a letter to Deputy Warden Tool regarding the issues related to his medical treatment. Id. at 3. Plaintiff also states he was not given an inmate handbook outlining the grievance policy when he arrived at BCCI. Id. at 4.

Defendants filed a Reply and Surreply to Plaintiff's Responses addressing Plaintiff's arguments. Docs. 17, 19. Defendants state Plaintiff did not respond to Defendants' argument that Plaintiff's claims for injunctive relief are now moot because of his transfer. Doc. 17 at 1. Defendants also contend that exhaustion of administrative remedies is mandatory and Plaintiff did not exhaust. Id. at 2–3. Regarding Plaintiff's open records request, Defendants state Bulloch County never received Plaintiff's request. Doc. 19 at 2. However, as a show of good faith, Defendants state they have now sent documents to Plaintiff including records from the BCCI kiosk and other documents from Plaintiff's file at BCCI. Id. Defendants also attached Plaintiff's orientation checklist, showing that Plaintiff signed off and affirmed that he reviewed the grievance process and received the facility handbook upon arriving at BCCI. Id. at 3.

## DISCUSSION

I.  **Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting

4

Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.    Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word

"available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 578 U.S. at 642; Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")))·  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."  Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Ross, 578 U.S. at 642.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones").  Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it."  Ross, 578 U.S. at 642.  Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust.  Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding

6

exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of

7

Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record."). However, if the issue of exhaustion is "intertwined with the merits of a claim protected by the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate. Perttu v. Richards, 605 U.S. ___, 145 S. Ct. 1793, 1800 (2025).

### III.   Applying Turner

As an initial matter, I address whether the grievance procedure is mandatory before applying the two-part test from Turner. Plaintiff argues the BCCI grievance procedure does not make it mandatory to file a grievance before filing a claim under 42 U.S.C. § 1983. Plaintiff contends filing a grievance is optional because the handbook states an offender "may" file a grievance. Doc. 15 at 4. However, Eleventh Circuit precedent states that the exhaustion of available administrative remedies is mandatory before filing an inmate can file § 1983 claim. See Varner v. Shepard, 11 F.4th 1252, 1257 (11th Cir. 2021) ("Thus, when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.") (citations and punctuation omitted). Therefore, Plaintiff's argument is unpersuasive. Plaintiff was required to file a grievance and follow the BCCI grievance procedure before filing his § 1983 claim.

### A.   The Georgia Department of Corrections' ("GDC") Administrative Remedies

Bulloch County Correctional Institute, where these claims arose, utilizes the GDC procedures for prisoner grievances. Doc. 13 at 2. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. Doc. 13-1 at 2. Under SOP 227.02, inmates

8

may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender" and that is not explicitly listed in the SOP as a "non-grievable issue." Id. at 10.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal.  Id. at 14.  Under SOP 227.02, absent "good cause," original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance.  Id.  The complaint must be a single issue or incident.  Id.  Then, if an inmate is dissatisfied with the response or if the time allowed for the Warden's decision has expired, he may appeal the decision to the GDC Central Office.  Id. at 20.  An appeal must be filed within seven days of an inmate receiving the Warden's response.  Id.  The GDC Commissioner then has 120 days after receiving the appeal to deliver a decision to the inmate.  Id. at 21.  Only then is the grievance procedure complete.  Id.

**B.   Plaintiff Did Not Exhaust Available Administrative Remedies**

**1.   *Plaintiff's claims survive under Turner step one.***

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.

Defendants assert that Plaintiff never filed a grievance relating to the issues in his Complaint.  Doc. 13 at 3.  Defendants state that Plaintiff's only grievances while incarcerated in the Georgia Department of Corrections were three grievances that he filed at Autry State Prison in 2018 and 2019.  Doc. 13-1 at 27.  Defendants state that Plaintiff did not file any grievances after his arrival to BCCI.  Plaintiff also did not file any grievances related to the events in his Complaint after he was transferred to Montgomery State Prison.  Id. at 4.

In response, Plaintiff argues the grievance procedures at BCCI do not require inmates to file a grievance before filing a claim under § 1983. Doc. 15 at 4. Plaintiff argues Defendants failed to provide any health care services for his chronic conditions. Plaintiff states he reported the lack of medical treatment to Defendant Warden Tillman, and Tillman told Defendant Hughes Plaintiff needed to see the doctor. Doc. 18 at 2. Plaintiff states he was not sent to the doctor, and he started filing complaints on the kiosk. Doc. 18 at 2. Plaintiff also states that he did not receive an inmate handbook outlining the grievance procedures upon his arrival to BCCI. Id. at 4. Plaintiff contends that if he had waited to file a grievance, he would have lost his life. Id. at 5.

Plaintiff's allegations and Defendants' allegations regarding the filed grievances do not conflict. Defendants assert Plaintiff did not file any grievances while incarcerated at BCCI. Plaintiff effectively concedes that he did not file any grievances. Plaintiff states he filed complaints on the kiosk but does not explain how kiosk complaints would satisfy the grievance procedure and the exhaustion requirement. Plaintiff admits he did not file a grievance because he feared it would further delay his medical treatment. Additionally, Defendants provided Plaintiff with a copy of his kiosk complaints. Plaintiff did not attach any complaints in support of his exhaustion argument.

Plaintiff does, however, state that he was never provided an inmate handbook with the grievance procedures. This raises a question of whether the grievance process was unavailable to Plaintiff. See Ross, 578 U.S. at 644 (stating an administrative procedure is unavailable when it is "essentially unknowable"). There is a genuine dispute of material fact, and—at step one under Turner—the Court must take Plaintiff's allegations as true. Looking solely at Plaintiff's

Responses, his allegations are enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first prong of the Turner test.

        2.     ***Plaintiff's claims should be dismissed under <u>Turner</u> step two.***

The parties' filings demonstrate a factual dispute. Specifically, Plaintiff claims he never received the BCCI inmate handbook and was unaware of the grievance procedures. Defendants disagree. Therefore, the Court must determine, as a factual matter, whether the administrative remedy was available to Plaintiff.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts." Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008). Nevertheless, a presiding judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)). Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment. See Womack, 2008 WL 4104148 at *5 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

Failure to exhaust is an affirmative defense that, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were

11

available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue"). Here, both parties have submitted argument or evidence on the issue of exhaustion and the availability of the grievance process. Therefore, the parties have had a sufficient opportunity to develop the record.

Defendants have carried their burden to show the grievance procedure was available to Plaintiff. Defendants provide Plaintiff's orientation checklist. Doc. 19-2. The checklist shows that Plaintiff signed off on reviewing the grievance process and receiving the facility handbook. Plaintiff initialed each category of the checklist and signed the bottom of the checklist stating he was given a formal orientation to BCCI and was given an opportunity to ask questions. Id. Plaintiff did not provide any evidence rebutting the orientation checklist that Defendants submitted. Therefore, Defendants have shown that Plaintiff was provided the inmate handbook

12

upon his arrival to BCCI and was aware of the grievance procedure. The evidence shows the grievance procedure was available to Plaintiff.

Defendants have carried their burden to show Plaintiff did not exhaust his available administrative remedies. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's claims against all Defendants.

### IV.     Plaintiff's Requests for Injunctive Relief Are Moot

Defendants also argue that Plaintiff only seeks injunctive relief and such claims are now moot. Doc. 13 at 7. Defendants argue that because Plaintiff has been transferred to Montgomery State Prison, his claims for injunctive relief are moot. Id. Defendants reiterate this argument in their Reply. Doc. 17 at 1. Plaintiff fails to respond to any of Defendants' arguments regarding mootness.

In Plaintiff's Complaint, he seeks the following relief: "I'm asking this court as a plea for help and issue an order that I be taken to a hospital for the necessary medical attention that I need." Doc. 1 at 13. Plaintiff asks to not be transferred to state prison because he needs medical attention. Plaintiff also asks the Court to obtain his medical files. Id. at 14. Since filing his Complaint, Plaintiff has been transferred to Montgomery State Prison. Doc. 13-1 at 4.

The Eleventh Circuit Court of Appeals has held that a prisoner's transfer from a correctional facility will generally moot claims for injunctive relief. See Owens v. Centurion Med., 778 F. App'x 754, 758 (11th Cir. 2019) ("[A] prisoner's transfer or release from a correctional facility generally will moot his claims for injunctive relief in a § 1983 action."); Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (determining that once the prisoner was transferred to another facility, his claims for injunctive relief no longer presented a case or controversy). When the chance of a prisoner's return to the offending facility is too speculative,

13

there is no case or controversy for a court to adjudicate. Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) ("The most that can be said is that if [plaintiff] is again incarcerated at a minimum security facility and again charged with a disciplinary infraction, he might again be transferred to [the offending facility]. This is too speculative.").

Defendants have shown that Plaintiff's claims—which seek only injunctive relief—are now moot. Plaintiff was transferred to Montgomery State Prison after he filed his Complaint. Plaintiff's transfer to another facility moots his § 1983 claims against Defendants. Plaintiff's transfer renders moot his deliberate indifference claims for which he solely sought injunctive relief. Additionally, nothing indicates Plaintiff will be transferred back to BCCI. The possibility that he may be transferred back at some point in the future is too speculative. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS as moot** Plaintiff's claims for injunctive relief.

V.   **Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address this issue now. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, **DISMISS as moot** Plaintiff's claims for injunctive relief, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 19th day of August, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA